IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JESSICA ROSA, <br><br> Plaintiff, <br><br> v. <br><br> AUBURN UNIVERSITY-MONTGOMERY AND AUBURN UNIVERSITY <br><br> Defendant. | Civil Action No. <br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

COMES NOW, Jessica Rosa ("Plaintiff" or "Rosa"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

**NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant ("Defendant" or "AUM") and Auburn University (Auburn) for violations of her rights under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991," 42 U.S.C. § 2000e, et. seq. ("Title VII").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 (Federal question), 28 U.S.C. §§ 1343 (depravation of a constitutional or Federal statutory right).

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 venue is appropriate in this Court as all parties are located wtihin the Middle District of Alabama, Northern Division.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff fulfilled all conditions necessary to proceed with this cause of action under Title VII as she timely filed a charged of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (See Charge of Discrimination Attached as Exhibit A).

5.

Plaintiff timely files this action within 90 days after receipt of the right-to-sue letter issued by the EEOC (See Right to Sue Letter attached as Exhibit B).

## PARTIES

6.

Plaintiff, Rosa, is over the age of nineteen (19) and is a Female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant, Auburn University Montgomery ("AUM") is a public univeristy incorporated under the laws of Alabama Code § 16-48-1 et. al.

8.

AUM is an employer within the meaning of Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000(e) *et. seq*.

9.

AUM employs approximately Five Hundred (500) full-time employees.

10.

AUM's primary place of business is located in Montgomery County, Alabama.

11.

Defendant, AUM, may be served with process by delivering a copy of the summons and complaint at 7440 East Drive, Montgomery, Alabama 36117.

12.

At all times relevant, Defendant, Auburn University, is a public university incorporated under the laws of Alabama Code § 16-48-1 et. al.

13.

Auburn is an employer within the meaning of Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991, 42 U.S.C. §2000(e) et. seq.

14.

Auburn employs approximately 500 full-time employees.

15.

Auburn's principal place of business is located in Lee County, Alabama.

16.

The Defendant, Auburn, may be served with process by delivering a copy of the summons and complaint care of Dr. Christopher B. Roberts, President, Office of the President, 107 Samford Hall, Auburn, AL 36849.

## FACTUAL ALLEGATIONS

17.

Rosa incorporates by reference and realleges each of the preceding paragraphs as if set herein.

18.

Rosa is a woman.

19.

Rosa began working for the Defendant in October of 2006.

20.

Rosa became Senior Director of Athletics on or about March 1, 2017.

21.

In December 2021, over the holiday break, Rosa entered into a consensual, same-sex relationship with the Women's Head Soccer Coach, Julianne Herrity ("Herrity").

22.

Herrity reported directly to the Associate Athletic Director, Amber Rae Childers ("Childers").

23.

Childers reported to Rosa.

24.

School started back on or about January 12, 2022.

25.

On or about March 7, 2022, Rosa disclosed her relationship status to her direct supervisor the Chancellor of the University, Carl Stockton ("Stockton") pursuant to the Defendant's Consensual Relationship Policy.

26.

Upon reporting the relationship, Stockon wanted guess who the relationship was with and then guessed it was with Childers.

27.

Rosa told Stockton who she was in the relationship with, but he didn't know who it was.

28.

Rosa stated she understood that steps needed to be taken, and requested the matter be handled confidentially until they had an opportunity to inform staff as it related to reporting lines.

29.

Specifically, Rosa requested the relationship not be disclosed to anyone who did not need to know and specifically identified the 9th floor and Scott Parsons, CFO, (and direct report of Human Resources) as there was a gossip culture within that

department causing rumors and assumptions about why individuals are meeting in HR.

30.

Stockton informed Rosa that he would have to notify Leslie Meadows as she is the Chief Human Resources Officer, and Ms. Rosa stated she understood that was part of the process.

31.

Stockton told Rosa that AUM and Auburn have these situations all the time, then told her that they just have to develop a reporting line to avoid any conflict of interest at the workplace.

32

After the meeting, but on the same date, Stockton disclosed the relationship to Chief Human Resources Officer Leslie Meadows ("Meadows").

33.

Later that afternoon, Stockon called Rosa back into the office to meet with him and Meadows.

34.

Meadows asked Rosa when the relationship began, and she told her they decided it was something they wanted to pursue over the holidays.

35.

After that disclosure, Meadows and Stockton began to discuss with Rosa an alternative reporting line for Herrity so that Herrity would not have to report to Rosa.

36.

Rosa reminded Meadows and Stockton that Herrity reported to Childers.

37.

Rosa proposed Childers report directly to Stockton when it came to Women's soccer which would remove Herrity out of her line of report.

38.

Meadows, for unknown reasons, suggested there needed to be another layer of reporting in between Childers and Stockton.

39.

The conversation turned to who reports directly to Stockton, and Scott Parson's was mentioned.

40.

Rosa causally objected to Scott Parson's as she knew it would not work.

41.

Rosa suggested Meadows be the middle reporting layer stating Herrity could report to Meadows or that Childers could report to her as it relates to Women's soccer.

42.

At the conclusion of the meeting, Meadows told Rosa she would talk to Auburn and then follow up with her by the end of the week when she had more information about what the next steps would be.

43.

After this meeting, either on March 7, 2022, or March 8, 2022, Meadows called Rosa to update her on "[her] situation".

44.

Meadows told her she reached out to Auburn compliance and spoke with Kristin Roberts ("Roberts").

45.

Meadows stated Roberts was receptive as she has her own management plan in place, but Robert's boss, Robert Gottesman ("Gottesman"), was out of town, and that it would not be until the following week before they were in a position to discuss again.

46.

The Defendants regularly gave management plans to heterosexual couples and family members within the Universities to ensure there is no conflict of interest.

47.

On or about March 16, 2022, Meadows and Tonya Dupree met with Rosa and asked Rosa personal questions about Rosa and her relationship with Herrity.

48.

Meadows told Rosa Auburn is not as receptive to this as she initially thought and told Rosa her ability to fairly execute her job responsibilities as Athletic Director was in question.

49.

Rosa defended herself stating if she does anything, it is in fairness.

50.

Meadows asked Rosa again whether the relationship is on-going, to which Rosa asked what bearing that had on anything.

51.

Meadows subsequently asked multiple time if the relationship was on-going.

52.

Rosa asked her what this means, and Meadows told her they were going to take some information back to Auburn and they would get back with her.

53.

Rosa asked if this meant she was going to be terminated and Meadows responded, "Jessie that is not what I want you to think (patting her hand on the

desk). Tonya and I tell every employee that we want them to leave AUM on their terms…I don't want you to think that. I don't want termination to be in your head".

54.

Meadows asked Rosa if there was anything else she has done when it comes to mitigating, and Rosa responded she reported it to them and she is just waiting to hear from them as to what the next steps are to take.

55.

Meadows then asked if she had any other ideas about reporting lines to which Rosa told her not at that time.

56.

Meadows told Rosa she would be speaking with Herrity.

57.

Later that evening, Meadows called Rosa to tell her she received the TEAMS message Rosa sent her and Dupree asking how AU reporting lines worked with basketball coach, Bruce Pearl and his son (males who are not in same sex relationships) on his coaching staff, and Meadows told Rosa she had a call with Auburn the next day. Meadows told Rosa she did not want to seem "adversarial" when she spoke with Auburn.

58.

Rosa also sent Meadows and Dupree a message identifying an option of "co-Athletic Directors" which Meadows admitted she hadn't had a chance to look into yet as it was sent that day.

59.

On or about March 22, 2022, Rosa was terminated from her employment at AUM.

60.

Defendant cited violation of the Consensual Relationship Policy as a reason for termination, which was false as Rosa followed the policy.

61.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

62.

Rosa was treated less favorably in the terms or conditions of employment than others outside of their protected class, i.e., sex.

## CLAIMS FOR RELIEF

## COUNT I: VIOLATION OF TITLE VII - SEX DISCRIMINATION

63.

Rosa incorporates by reference and realleges each of the preceding paragraphs as if set forth fully herein.

64.

Rosa is a woman involved in a same-sex relationship.

65.

Rosa was qualified for her position as Senior Director of Athletics.

66.

Defendant terminated Rosa two weeks after she reported a consensual same sex relationship in accordance with the University Policy.

67.

Prior to her termination, Rosa had not received any counseling or written warnings.

68.

Meadows told Rosa that Auburn was not as receptive to her "situation" as she thought they would be.

69.

Rosa has established a convincing mosiac of circumstantial evidence that the jury could find inentional discrimiation i.e. that she was terminated becuaes of her sex.

70.

Rosa's sex (her same-sex relationship) was a motivating factor in Defendant's decision to terminate her employment.

71.

Defendant's actions in terminating Plaintiff's employment violated Title VII.

72.

Defendant's stated reason for termination, a violation of policy, is false as Rosa followed policy by reporting the releationship.

73.

Because of Defendant's violation of Title VII, Rosa was caused to suffer the following injuries and damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear, worry about her future, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT II: VIOLATION OF TITLE VII - RETALIATION

74.

Rosa incorporates by reference and realleges each of the preceding paragraphs as if set forth fully herein.

75.

Rosa engaged in protected conduct when she reported a same-sex based discrimination as she enquired how Bruce Pearl and his son (males who were not in a same-sex relationship) were treated differently in their reporting lines when she was told her decision making and job was in question.

76.

Just days later, Defendant subjected Rosa to an adverse employment action when it terminated her employment.

77.

There was a causal connection between the protected conduct and the adverse action as there was close temporal proximity.

78.

Rosa has established a convincing mosiac of circumstantial evidence that the jury could find inentional discrimiation i.e. that she was terminated becuaes of her complaint of the difference in treatment between herself and Bruce Pearl's sitution with his son.

79.

Defendant's actions in terminating Plaintiff's employment violated Title VII.

80.

Defendant's stated reason for termination, a violation of policy, is false as Rosa followed policy by reporting the releationship.

81.

Because of Defendant's violation of Title VII, Rosa was caused to suffer the following injuries and damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear, worry about her future, emotional distress, pain, suffering, and out of pocket expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Reasonable attorney's fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment interest at the rate allowed by law;

(f) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(g) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(h) All other relief to which may be entitled.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

                        **BARRETT & FARAHANY**

                        s/ *Patricia A. Gill*
                        Patricia Gill
                        Alabama Bar No. ASB-0780-I66P

                        Counsel for Plaintiff Jessica Rosa

2 20th Street North, Suite 900
Birmingham, AL 35203
(205) 789-1906
trish@justiceatwork.com