IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **Jessica Rosa,** | ) |
| | ) |
| Plaintiff(s), | ) |
| v. | ) Case No.: 2:24-cv-00013-MHT-CWB |
| | ) |
| **Auburn University-Montgomery,** | ) |
| **and Auburn University,** | ) |
| | ) |
| Defendant(s). | |

**Plaintiff's Bench Brief**

COMES NOW, Jessica Rosa, by and through her attorneys of record and responds to this Honorable Court's Order (Doc. 41) requesting the Plaintiff to brief two issues with citations and applicable caselaw, as follows:

1. **WHETHER TOBIAS MENSE'S ALLEGED STATEMENT TO PLAINTIFF THAT SCOTT PARSONS HAD TOLD HIM THAT PLAINTIFF SHOULD NOT HAVE BEEN ATHLETIC DIRECTOR BECAUSE SHE WAS FEMALE, GAY, AND TOO YOUNG IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE, AND IF SO, UNDER WHICH RULE(S)**

At issue in this case is the admissiblity of what Rosa says Mense told her that Parsons told him. On its face, Rosa's statement appears to be double or even triple hearsay. However, analizying the statement in parts, as required by the Federal Rules of Evidence, each statement standing alone is admissible and is therefore admissible as a whole. "Hearsay within hearsay is not excluded by the

rule against hearsay if each part of the combined statements conforms with an exception [or exclusion] to the rule." Fed. R. Evid. 805. *See Brown v. Ala. Dept of Trnspt*, 597 F.3d 1160, 1175 n8 (11th Cir. 2010) (finding alleged triple hearsay statements admissible when the declarants were agents of the opposing party); *Rivera v. Palm Beach Cty*, 2021 U.S. Dist. LEXIS 51376, *12 (S.D. Fla. March 15, 2021) (indicating the admissiblity of triple hearsay if the burden were carried by the presenter of the evidence).

### a. Rosa's testimony about what Mense told her Parsons said is not hearsay.

Out of court statements made by a party opponent are not hearsay. Fed. R. Evid. 801(d)(2). Also, out of court statements offered for some purpose other than the truth of the matter are not hearsay. Fed. R. Evid. 801(c)(2). Rosa's testimony recounting what Mense told her satisfies both of these exclusions and is therefore not hearsay.

In her deposition, Rosa testified she did not believe she could report to Scott Parsons because she knew from Tobias Mense that Parsons did not support Rosa as AUM's Athletic Director because she was too young, female, and gay. (Rosa Depo Doc. 21-1 p 22, 81:8 – 82:5). During this time, Mense and Parsons were both higher level executives for AUM, with Mense serving as AUM's Chief Information Officer and Parsons serving as AUM's Chief Financial Officer and

supervising the Chief Human Resources Officer Leslie Meadows. (Stockton Depo 16:3-06, Parsons Depo Doc. 21-25 p 8, 24:12-16). A statement by a party's agent, made within the scope of the agent's employment is admissible and is not hearsay. Fed. R. Evid. 801(d)(2)(D). The Eleventh Circuit has labeled higher level executives as "clearly" agents of a company. *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 557 (11th Cir. 1998). Because both Mense and Parsons were higher level executives, they were both agents of AUM, leaving for consideration whether the statements were made within the scope of their employment.

"[S]tatements made by a supervisory official who plays some role in the decision making process are generally admissible. *Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1456 (11th Cir. 1997). Executive positions such as Chief Information Officer and Chief Financial Officer, are positions that reflect the service of the overall business plan of a company. Therefore, statements about personnel decisions and beliefs about employee qualifications are within the scope of the agency or employment. Accordingly, Parsons's statement speaking to his belief that Rosa should not be Athletic Director because she was too young, female, and gay is within his scope of employment as AUM's CFO. In his deposition, Parsons testified as the CFO he was in charge of the financial management of AUM but also supervised Leslie Meadows, Chief Human Resources Officer. (Parsons Depo Doc.21-25 p 8, 24:14-16; Meadows Depo Doc.

3

21-3 p 6, 15:17). In this role, it would be reasonable, and in fact expected, that his opinion as to the qualifications of AUM's Athletic Director was relevant and within the scope of his employment. In addition to all of the statements set out in Section 2 *infra*, Parsons testified he had knowledge of an employee issue with Rosa and that HR "reported" to him, was very quiet about it, he could not recall details, but it was typical for HR to work with legal if the issue "was of any magnitude." (Parsons Depo 18:4-19-11). Accordingly, Parsons's statement related to Rosa qualifications was well within the purview of his agency, is admissible, and is not hearsay.

Mense was the CIO, an executive tasked with managing a cohesive and integrated administrative environment. Sharing Parsons's opinion of Rosa with her would be within the scope of his employment. Further, the statement could be seen as a "direct warning" by another member of management "as to the attitude, intentions, and/or policy of the higher-ups in management[,]" and therefore, not "second hand repetitions[.]" *Hybert v. Hearst Corp.*, 900 F2d 1050, 1053 (7th Cir. 1990). Accordingly, Mense's statement to Rosa is within the purview of his agency, is admissible, and not hearsay.

Rosa's ability to testify to the statement is based on the effect the statement had on her state of mind and is a relevant issue in this case. "Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay." *United*

4

*Sates v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015). Rosa's state of mind related to Parsons and any statement Parsons may have made was relevant as to why she would not have wanted to be in his reporting chain, to the reasonableness of her belief that AUM retaliated against her, and the motive behind the decision to terminate her. Relying on this reasoning, Judge Emily Marks recently admitted a plaintiff's statement concerning what a supervisor told her about an alleged company policy. Judge Marks stated "[r]ather than proving the truth of the matter asserted, the statement could evidence [of the plaintiff's] state of mind when she made her complaint . . . , which is relevant to the first element of her retaliation claim. . . . Whether [the declarant], in fact, made the statement is a question of fact for the jury." *Key v. Hyundai Motor Mfg. Ala., LLC, et al*, No. 2:19-cv-767-ECM, 2023 U.S. Dist. LEXIS 22895, at *45 N12 (M.D. Ala. Feb. 10, 2023). Accordingly, Rosa's state of mind is relevant to why she would not have wanted Parsons to manage her, her belief she was retaliated against, and most importantly, why AUM believed the plan was not manageable. Because it speaks to the effect on the hearer, Mense's statement to Rosa is not hearsay and is admissible.

    **b. Mense's Statement, if made at trial, would be admissible and therefore should be considered in the summary judgment record.**

Even assuming the Court were to decide that Mense's statement was not within the scope of his employment, any hearsay objection would be cured at trial. The

Eleventh Circuit has stated unequivocally, "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.2d 1283, 1294 (11th Cir. 2012). If the Court were to determine that Mense's statement to Rosa was hearsay, finding it was either out of his scope of employment or not relevant to Rosa's state of mind, it would still be admissible. Because Rosa can call Mense to testify live at trial, she can cure the hearsay. The Court can consider inadmissible hearsay statements if the statement can be reduced to an admissible form at trial. *Id.* at 1293-94. ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form."). Plaintiff intends to call Tobias Mense at trial and has properly disclosed him. Because his statement to Rosa can be reduced to live, admissible testimony, the statement may be considered as a part of the summary judgment record.

### c. Parsons's Statement, even if hearsay, is admissible as an exception.

Either Rosa or Menese could testify to Parsons's statement because the statement is admissible as a hearsay exception. Any statement concerning the "declarant's then-existing state of mind (such as motive, intent, or plan)" or mental feeling is "not excluded by the rule against hearsay[.]. Fed. R. Evid. 803. As an

executive top level official for AUM, to whom HR reports, a reasonable jury may infer that Parsons's feelings toward Rosa and her "qualifications" were relevant to any subsequent employment actions taken by AUM. This is further supported by the evidence discussed below in Section 2 *infra*. Accordingly, Parsons's mental state, motive, or intent is relevant making his statement admissible under the hearsay exceptions.

For the multiple reasons, rules, and precedent set out above, the statement at issue is admissible in this matter and should be considered with the remainder of the summary judgment record.

2. **WHAT EVIDENCE IN THE RECORD, IF ANY, SUPPORTS PLAINTIFF'S ARGUMENT THAT PARSON'S INFLUENCED LESLIE MEADOWS AND/OR THE DECISION-MAKING PROCESS MORE GENERALLY WITH REGARDS TO PLAINTIFF'S TERMINATION, AND, IF THERE IS SUCH EVIDENCE, WHETHER THE EVIDENCE IS SUFFICIENT TO CREATE A GENUINE DISUPTE AS TO ANY MATERIAL FACT.**

The summary judgment record contains sufficent circumstantial evidence that a reasonable juror could rely on to conclude Parsons influnced Leslie Meadows and/or the decision making process to terminate Rosa. The record evidence includes the following:

- Scott Parsons directly supervised Human Resources employee Leslie Meadows (Parsons Depo Doc. 21-25 p 4, 9:9-10).

7

- Leslie Meadows office is close in proximity to Parsons's office (Parsons Depo Doc. 21-25 p 4, 9:6-8).

- Parsons became CFO and moved to the AUM camups at approximatly the same time the university promoted Rosa to Athletic Director (Parsons Depo Doc. 21-25 p 4, 10:1-9) (Rosa Depo Doc. 21-1 p 117).

- Parsons played golf with Stockton – the Chancelor. (Parsons Depo. Doc. 21-25 p 5, 12:5-6).

- When he first moved to the AUM campus and Rosa became Athletic Director, Parsons attended an Auburn Football game with Stockton. (Parsons Depo. Doc. 21-25 p 5, 13:8-10).

- When Leslie Meadows first discussed Rosa's consensual relationship disclosures with the University, she told Rosa they were receptive and were reviewing the information. (Meadows Depo Doc. 21-3 p 22, 78:3-79:6).

- Parsons was aware of Rosa's termination and that Leslie Meadows was working through Rosa's issues "because HR reported to [him]. (Parsons Depo Doc. 21-25 p 7, 18-19:14).

- Parsons testifed he was informed about the issues related to Rosa because "HR reported to him[.]" (Parsons Depo. Doc. 21-25 p 7, 18:4-15).

- Parsons denied discussing the details "as it evolved" but stated Leslie Meadows reported it to him and it was "not uncommon" for her to report the matters to him. (Parsons Depo Doc. 21-25 p 7, 18:13-18).

- Parsons could not recall the specifics of any conversation but knew they were working with Auburn's general counsel like with any issue that was "of any magnitude." (Parsons Depo Doc. 21-25 p 7, 18:19-19:14).

- Parsons had knowledge that Rosa disclosed a consensual relationship. (Parsons Depo Doc. 21-25 p 7, 21:9-22:8).

- Meadows discussed the details of Rosa's disclosure and relationship with Parsons between March 7 and March 16. (Meadows Depo Doc. 21-3 p 26, 94:20-95:4)

- Parsons was shocked, in disbelif, and stated to Meadows that he did not know how the conflict could be managed. (Meadows Depo Doc. 21-3 p 26, 95:1-11).

- Meadows and Parsons spoke on a daily basis. (Parsons Depo Doc. 21-25 p 8, 23:6-12).

- Parsons was aware there were meetings with Rosa. (Parsons Depo Doc. 21-25 p 9, 26:18-27:23.

- Parsons had "a lot of regular intersection with Leslie [Meadows] and Dr. Stockton." (Parsons Depo Doc. 21-25 p 9, 27:12-14).

9

- Parsons made assumptions Meadows and Stockton were meeting about Rosa. (Parsons Depo Doc. 21-25 p 9, 27:3-23).

- By March 16, after she had discusssions with Parsons, Meadows changed her position toward Rosa stating she had serious questions about Rosa's leadership and judgment. (Meadows Depo Doc. 21-3 p 26, 94:1-8).

- A reasonable Jury could infer that Meadows made her recommendation based on the disapproval and statements of her direct supervisor, Parsons.

- Parsons as CFO is in charge of financial management of the university. (Parsons Depo Doc. 21-25 p 8, 24:12-16).

- It is reasonable to infer that the CFO in charge of financial management of the university would be concerned about litigation or fundraising/benefactors as they both affect the financial status of the university.

- Less than one year into Parsons's role as CFO, a donor complained about the university's support of gay individuals and withdrew his financial bequest, Stockton told Rosa she didn't have anything "crazy" on her facebook, and asked she not tell anyone. (Rosa Depo Doc. 21-1 p 11, 35:15-37:23).

- Meadows testified she, Stockton and Parsons (she stated "we" in response to a question about Stockton and Parsons) discussed the compliance letter before she made the recommendation to terminated Rosa. (Meadows Depo Doc. 21-3 p 34, 126:6-14).

- Parsons was involved in discussions about the potential management plan for Chasen and Scottie, a heterosexual couple involved with athletics, *after*, somone else pointed out they were in a relationship. (Parsons Depo Doc. 21-25 p 9, 28:10-29:11).

- Parsons, as a member of senior staff acknowldged he could be involved in employment discussions, despite not being in meetings for any actual investigation. (Parsons Depo Doc. 21-25 p 10, 30:17-32:1)

- Given Parsons's involvment in other management plan discussions, his position as senior staff, Meadows's statement concerning his response to Rosa's disclosure, and Meadows's change from receptive to finding a plan to questioning Rosa's judgment, a reasonable juror could infer Parsons's opinion on the matter changed Meadows's judgment.

Considering all of the deposition statements above, Rosa's statement concerning Parsons's opinion of her qualifications because she was gay and female, and drawing all reasonable inferences in favor of Rosa, there is sufficient evidence which a reasonable juror could find Parsons's opinion of Rosa and

disapproval to Meadows had an effect on Meadows's decision to recommend Rosa's termination. "A genuine issue [of fact] exists if the evidence, viewed in the light most favorable to the employee, would allow a reasonable jury to infer that the employer engaged in intentional [discrimination or] retaliation." *Berry v. Crestwood Healthcare LP*, 84 F4th 1300, 1320 (11th Cir. 2023). Accordingly, the evidence is sufficient to survive summary judgment.

                                                Attorneys for Plaintiff,
                                                <u>/s/Leslie A. Palmer</u>
                                                Patricia Gill

OF COUNSEL:
The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
T. 205-329-6392
trish@theworkersfirm.com

                                                Leslie A. Palmer

PALMER LAW, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
Phone: (205) 285-3050
leslie@palmerlegalservices.com

                                                Lacey Wilson

The Workers Firm LLC
2 North 20th St, Suite 900
Birmingham, AL 35203
T. 205-329-6392
lacey@theworkersfirm.com

## **CERTIFICATE OF SERVICE**

      I certify that on July 2, 2025, I filed a copy of the foregoing using the CM/ECF system, which will serve a copy to all counsel of record.

Doug Kauffman
Ames Filippini
David R. Boyd (Montgomery)
Tashwanda Pinchback Dixon (Atlanta)
BALCH & BINGHAM
1901 Sixth Avenue North
Suite 1500
Birmingham, AL 35203-4642
dkauffman@balch.com
afilippini@balch.com
dboyd@balch.com
tpinchback@balch.com

                                    OF COUNSEL
                                    */s/Leslie A. Palmer*
                                    Leslie A. Palmer